**Dated: September 18, 2006**
**The following is ORDERED:**



*Tom R. Cornish*
Tom R. Cornish
UNITED STATES BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

IN RE:

**DAVID L. ORMAN and VICKI L. ORMAN,**          Case No. 05-71955
                                                Chapter 7

       Debtors.

**DAVID L. ORMAN and VICKI L. ORMAN,**

       Plaintiffs,

vs.                                             Adv. No. 05-8135

**ADJUSTMENT BUREAU, INC.,**

       Defendant.

## O R D E R

On the 17th day of July, 2006, the above referenced adversary proceeding came on for trial. Counsel appearing were Brendan M. McHugh for Plaintiffs, and Robert Inglish for Defendant. After hearing arguments of counsel, the Court does hereby enter

the following findings and conclusions in conformity with Rule 7052 Fed. R. Bankr. P., in this core proceeding.

FINDINGS OF FACT

The parties stipulated that the Plaintiffs filed bankruptcy on May 10, 2005, were granted a discharge on August 11, 2005, and that the Plaintiffs' matrix listed "HCFS," with a post office box address in McAlester, Oklahoma, as a creditor. Prior to filing this bankruptcy, Plaintiff David Orman became indebted to the McAlester Regional Health Center ("MRHC") (also referred to as McAlester Regional Hospital) for medical services. Mr. Orman had three debts to MRHC, each represented by a separate account number. Plaintiffs mailed payments on the debts owed to MRHC to HCFS. The Defendant Adjustment Bureau, Inc. ("ABI") is a collection agency that collects accounts, primarily for the MRHC. In June of 2005, ABI was assigned to collect Mr. Orman's accounts. Plaintiffs did not list ABI or MRHC on their bankruptcy schedules, therefore the only notice of their bankruptcy was sent to HCFS.

After filing bankruptcy, Mr. Orman received letters from ABI regarding his accounts with MRHC. He received three letters dated June 10, 2005, that simply gave notice that the accounts had been assigned to ABI for collection, and asked for notice in writing if Mr. Orman disputed the validity of the debt. These letters identified McAlester Regional Hospital as the original creditor, were signed by "Cindy," and included this notice: "This is an attempt to collect a Debt, and any information will be used for that purpose." Upon receiving these notices, Mr. Orman contacted his bankruptcy attorney, Mr. Todd Konsure, by telephone, then traveled to Mr. Konsure's

2

Case 05-08135    Doc 42    Filed 09/18/06    Entered 09/18/06 15:33:19    Desc Main
Document      Page 2 of 9

office to deliver the notices. Mr. Konsure sent a letter to ABI, dated July 5, 2005, giving notice that the Ormans had filed bankruptcy, that they had listed the debt to the Hospital on their bankruptcy schedules, that contact with the Ormans was a violation of the automatic stay imposed by 11 U.S.C. § 262 (*sic*) as well as the Fair Debt Collection Practices Act, offered to settle the matter for $ 5,000.00, and demanded that all collection activity cease. The letter was delivered to ABI by certified mail on July 7, 2005. That same day, Mr. Donald Hackler, attorney for ABI, sent a written response to Mr. Konsure, requesting a copy of the notice of bankruptcy and evidence that ABI had previously been given notice of the bankruptcy, and stating ABI's position that there could be no violation of the stay by merely giving written notice that the Orman accounts had been turned over to ABI. Mr. Hackler also rejected Mr. Konsure's settlement offer. On July 8, 2005, Mr. Konsure's office faxed a copy of the Notice of Bankruptcy to Mr. Hackler.

Cindy Sagundes, account manager for Mr. Orman's accounts, testified that Mr. Orman telephoned ABI on July 7, 2005, gave notice that he had filed bankruptcy, and provided the name of his attorney. Ms. Sagundes verified the bankruptcy filing with Mr. Konsure. She located Orman's file, noted the bankruptcy on his accounts, and changed the status of his accounts in ABI's computer system to "bankruptcy."

ABI sent three more letters to Mr. Orman, dated July 13, 2005, entitled "NOTICE AND DEMAND FOR PAYMENT." These letters were signed by "Cindy," and apparently were mailed to Mr. Orman prior to July 13, 2005. These letters stated that: (1) Mr. Orman's account with MRHC has been turned over to ABI for collection; (2) ABI

3

"strongly recommend(s)" that Mr. Orman make arrangements to pay the amount due; (3) Mr. Orman should contact ABI within five days; and (4) legal action may be commenced and, if a judgment is obtained, an investigation of his assets may be commenced. Mr. Orman believed that these letters threatened him with a lawsuit, and this caused him and his wife worry and stress about that possibility. Mr. Orman immediately contacted Mr. Konsure, who advised him to record any telephone conversations with ABI. Mr. Orman then purchased a recording device and attached it to his telephone. Sometime after July 13, 2005, Mr. Orman spoke with Ms. Sagundes and Ms. Judy Jurina, another ABI employee, and recorded their phone conversation. Ms. Jurina apologized for sending the letters of July 13, 2005 to Mr. Orman, and explained that the letters had been sent in error. She assured him that his file had been removed from the collection system, his bankruptcy status noted, and that no one from ABI had contacted his employer.

Ms. Sagundes and Ms. Jurina speculated that the letters dated July 13, 2005, were actually printed and prepared for mailing prior to Mr. Orman's call on July 7, 2005. Mr. Hackler testified that ABI's policy is to not violate the automatic stay in bankruptcy. Upon notice of a bankruptcy or a hint that a bankruptcy may have been filed, ABI immediately stops its collection process. He stated that his employees properly followed the procedures in place. He also stated that this was the only lawsuit that had ever been filed against ABI for violation of the automatic stay.

The Ormans have previously filed bankruptcy. Both Mr. and Mrs. Orman testified that receiving the letters from ABI caused them considerable stress. Mrs.

4

Case 05-08135   Doc 42   Filed 09/18/06   Entered 09/18/06 15:33:19   Desc Main
Document      Page 4 of 9

Orman testified that she works for a bank and was under great stress that her employer might discover she had filed bankruptcy, and that ABI might file legal action to collect the debts to MRHC. Neither of the Plaintiffs required medical attention for the stress they suffered. Although their bankruptcy case was closed shortly after receiving the letters from ABI, the Ormans waited until November of 2005 to pursue their claim against ABI for violation of the automatic stay by reopening their bankruptcy case and filing this adversary proceeding.

The Ormans testified that they each missed two days of work to pursue their action against ABI: one day for appearing at a deposition and one day for this trial. Mr. Orman incurred mileage expenses for driving to Mr. Konsure's office, consisting of two trips of 50 miles each. Mr. Orman spent $ 80 to purchase the recording device to record his phone conversation with ABI. Schedule I of their bankruptcy schedules reflects that Mr. Orman's monthly income at the time of bankruptcy was $ 2,344.73, and Mrs. Orman's monthly income was $ 1,934.16.

## CONCLUSIONS OF LAW

The Bankruptcy code provides that the automatic stay prohibits "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title. . . ." 11 U.S.C. § 362(a)(6).[1] The Code

---

[1] This case was filed before October 17, 2005, when most provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 became effective. All statutory references to the Bankruptcy Code are to 11 U.S.C. §§ 101 to 1330 (2004), unless otherwise specified. All references to the Federal Rules of Bankruptcy Procedure are to Fed. R. Bankr. P. (2004), unless otherwise specified.

5

further provides that "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h). To impose sanctions for violation of the automatic stay, the Court must determine whether ABI's actions were "willful" under the statute. This does not require evidence of a specific intent to violate the stay, but only a finding that the defendant knew of the automatic stay and intended to take actions that violated the stay. *Diviney v. NationsBank of Texas, N.A. (In re Diviney)*, 225 B.R. 762, 744 (10th Cir. BAP 1998); *In re Gagliardi*, 290 B.R. 808, 818-819 (Bankr. D. Colo. 2003). Even where a violation of the stay is seemingly innocent because of lack of knowledge of the bankruptcy and stay, a violation can become willful if the creditor fails to remedy the violation after receiving notice of the stay. *Diviney* at 774.

In this case, ABI may not have initially known of the Ormans' bankruptcy, but it did receive notice at least by July 8, 2005. Even after this notice, ABI sent out three more notices that were attempts to collect a claim against Mr. Orman that arose prior to the commencement of his bankruptcy. Although ABI employees testified that these letters were sent by mistake, they did admit to sending the letters after receiving notice of the bankruptcy. Armed with this information, ABI should have verified that no further contact would be made with Mr. Orman. Under these circumstances, the July 13th letters were a "willful" violation of the stay. Once a willful violation is established, the award of damages is mandatory, as the statute states that the injured party "shall recover actual damages, including costs and attorneys' fees . . . ." 11 U.S.C.

§ 362(h); *Gagliardi* at 819.

The Plaintiffs testified that they suffered stress and anxiety over the contact from ABI, but some of this was caused by the bankruptcy filing itself and was not solely related to ABI's actions. Plaintiffs presented no evidence of any medical injuries nor did they otherwise quantify these injuries. Further, Plaintiffs waited several months after the last contact from ABI to pursue their action against ABI, which indicates that their level of stress was not so severe that they needed immediate assistance from this Court. Accordingly, this Court declines to award them damages for emotional distress. The only definitive actual damages attributable to ABI's actions would be Plaintiffs' claims for loss of wages, mileage, attorney fees and costs.

Plaintiffs testified that each took off two days from work to pursue their claim against ABI. Based upon their bankruptcy schedules, the Court awards Mr. Orman $235.00 for lost wages, and $194.00 in lost wages to Mrs. Orman. Plaintiffs are also awarded mileage at the IRS standard mileage rate of 48.5 ¢ per mile for two round trips of 50 miles each, totaling $48.50. The Court also awards the Plaintiffs their costs and attorney fees. Those amounts shall be determined upon Plaintiffs' counsel filing a verified application for such fees and costs and after an evidentiary hearing on that matter before this Court if necessary. The Court declines to award Mr. Orman the cost of the recording equipment he purchased.

The Court also declines to award punitive damages against ABI. The purposes for an award of punitive damages are to punish and to deter similar action in the future. The *Diviney* decision sets out two standards to consider in determining whether

7

punitive damages are appropriate. If the defendant acts "with actual knowledge that he was violating a federally protected right or with reckless disregard of whether he was doing so" then punitive damages may be appropriate. *Id*. at 776. The second standard a court may consider includes four different factors: (1) the nature of the creditor's conduct; (2) the creditor's ability to pay; (3) the motives of the creditor; and (4) any provocation by the debtor. *Id*. at 777. The Court heard no evidence that ABI acted recklessly in sending the July 13th letters to Mr. Orman, or that it acted with an intent to harass and intimidate him into paying a debt he did not have to pay. ABI attempted to remove Mr. Orman's file from its system. Plaintiffs provided no evidence of ABI's ability to pay a punitive damage award. Plaintiffs are experienced in bankruptcy, having previously filed bankruptcy to discharge their debts, and were advised to document their contacts with ABI. Based upon the evidence presented to the Court, the Court finds that punitive damages are not appropriate in this case.

Plaintiffs also seek to have this Court find that ABI violated the Fair Debt Collection Practices Act ("FDCPA"). 15 U.S.C. § 1692 *et seq*. Specifically, Plaintiffs assert that ABI harassed, oppressed and abused them in violation of § 1692d, falsely represented the character, amount and legal status of the debt in violation of § 1692e(2)(A), falsely implied that action was imminent in violation of §§ 1692e (4), (5), and (6), and failed to give proper disclosures in violation of § 1692e(11). The Court finds that Plaintiffs have failed to prove the violations asserted. Section 1692d generally requires more than mere harassment, but describes conduct that is much more egregious, such as threatening criminal actions, violence, use of obscene

8

language, and publication of information regarding the debt. ABI's notices to Mr. Orman clearly state that they are attempts to collect a debt, and the description of the debts owed and the procedures that may be instituted to collect the debts are truthful and not misleading. Further, the June 10th notices clearly state that Mr. Orman had thirty days within which to dispute the debt, and ABI's second set of notices to him were sent out after the end of this thirty day period. The Court finds that the evidence presented does not establish that ABI violated any of the provisions of FDCPA cited by the Plaintiffs.

Plaintiffs' counsel may file an application for costs and fees within fifteen days from the entry of this order and judgment. Defendant shall have fifteen days from receipt of the application to file its response.

IT IS THEREFORE ORDERED that judgment on the cause of action under 11 U.S.C. § 362 is **granted** to Plaintiffs. A separate judgment will be entered.

IT IS FURTHER ORDERED that judgment on the causes of action under 15 U.S.C. § 1692d and e is **denied**.

# # #

9